**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | |
|---|---|
| **ANTHONY D. PETERS,** )<br>)<br>**Plaintiff,** )<br>)<br>)<br>**v.** )<br>)<br>**NANCY BERRYHILL, Deputy** )<br>**Commissioner for Operations,** )<br>)<br>**Defendant.** ) | **No. 16 CV 6901**<br><br>**Magistrate Judge Michael T. Mason** |

**MEMORANDUM OPINION AND ORDER**

Michael T. Mason, United States Magistrate Judge:

Claimant Anthony D. Peters ("Claimant") seeks reversal of the final decision of the Commissioner of Social Security (the "Commissioner") denying his claim for disability benefits. The Commissioner has filed a cross-motion for summary judgment asking the Court to uphold the decision of the Administrative Law Judge ("ALJ"). For the reasons set forth below, Claimant's request for summary judgment is denied and the Commissioner's motion for summary judgment is granted.

**I. BACKGROUND**

**A. Procedural History**

Claimant filed his applications for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI") on November 20, 2012, alleging disability beginning on November 30, 2011 due to arthritis and rickets. (R. 128.) Claimant's applications were denied initially and on reconsideration. (R.99-121.) Claimant

requested a hearing before an ALJ, which was held on September 16, 2014.  (R. 34-78.)  On December 12, 2014, the ALJ issued a written decision finding that Claimant was not disabled.  (R. 16-29.)  On April 30, 2016, Claimant's request for review by the Appeals Council was denied, making the ALJ's decision the final decision of the Commissioner.  (R. 1-3.)  This action followed.

### B.  Medical Evidence

#### 1.  Treating Physicians

Records before the ALJ date back to 2008.  (R. 325.)  In June of that year, Claimant complained of severe, intermittent left knee pain.  (*Id.*)  His doctor opined that his pain was likely related to progressive early osteoarthritis.  (*Id.*)  He recommended topical and oral anti-inflammatory medication.  (*Id.*)  At a routine appointment in December 2009, Claimant had no pain complaints.  (R. 323.)  His knee pain had returned by March 9, 2010 after playing basketball.  (R. 322.)  But by July of that year, plaintiff's knee pain had resolved.  (R. 321.)  He reported that he had been sober for 17 years and played basketball regularly.  (R. 306.)  He was described as bow legged, with a normal, fit appearance.  (*Id.*)  At the time, he was working as a freelance photographer.  (*Id.*)  Claimant had "no complaints" in October 2010 and although he was bow legged, he reported no associated problems.  (R. 320.)

In April 2013, Claimant reported to a Cook County outpatient clinic complaining of pain and stiffness from arthritis.  (R. 312.)  He was described with a history of rickets (diagnosed as a child and treated with casting) and arthritis.  (*Id.*)  He described his pain as a 7 out of 10 at worst, but reported relief with movement and Aleve or Advil.  (*Id.*)  At the time, he was "thinking about going back to work."  (*Id.*)  Upon examination, Claimant

exhibited a normal range of motion, normal strength, no tenderness, and no swelling. (R. 313.) The examining physician advised Claimant to continue using NSAIDs (ibuprofen or Aleve) and to add Tylenol for improved pain control. (R. 313-14.) Imaging of the left knee from July 2013 revealed normal results other than anterior bowing. (R. 330.)

On March 27, 2014, Claimant was transported to Mercy Hospital following a car accident. (R. 360.) He complained of neck and back pain, bilateral foot tingling, and right groin pain. (*Id.*) He exhibited some tenderness of the cervical and lumbar spine, but exhibited normal range of motion throughout. (R. 361-62.) A CT scan was negative for dislocation or fracture, but did show mild degenerative changes in the cervical and thoracic spine unrelated to the accident. (R. 361, 371.) Claimant was diagnosed with neck and back sprains, treated with pain medication, and was discharged the same day. (R. 361-62.) He was prescribed ibuprofen and flexeril and advised to follow up with a primary care physician. (R. 348.)

Claimant presented a week later to the ER at the University of Illinois Medical Center, complaining of continued neck and left side pain, toe numbness, and intermittent shortness of breath. (R. 387-88.) The examining physician noted tenderness and decreased extension and left rotation of the neck, but normal range of motion of the back and normal strength in all extremities. (*Id.*) No rib fractures were visible on x-ray. (R. 409.) A CT scan again showed no spine fractures, but did demonstrate mild to moderate degenerative changes. (R. 406-07.) An ECG was normal. (R. 404.) Claimant was diagnosed with a neck strain and rib contusion and advised to continue taking ibuprofen and flexeril. (R. 393.)

The record before the Court includes additional medical records from treating physicians at the University of Illinois. (*See* R. 424-537.) Those records were not submitted to the ALJ despite Claimant being given an extension of time to submit additional records following his hearing. Claimant did submit the records to the Appeals Council in connection with his request for review. However, because the Appeals Council denied Claimant's request for review, it is not appropriate for the Court to consider those additional records here. *See Farrell v. Astrue*, 692 F.3d 767, 770 (7th Cir. 2012) ("Evidence that has been rejected by the Appeals Council cannot be considered to reevaluate the ALJ's factual findings."); *see also Rice v. Barnhart*, 384 F.3d 363, 366 n.2 (7th Cir. 2004). To be clear, Claimant has not taken issue with the Appeals Council's decision or asked the Court to find that the additional evidence was "new" and "material." *See* 20 C.F.R. § 404.970(a)(5). As such, we need not summarize or consider the additional medical records submitted after the ALJ's decision.

### 2. Agency Consultants

On January 25, 2013, Dr. Kimberly Middleton conducted an independent medical examination at the request of the Social Security Administration. (R. 291-99.) Claimant's chief complaints were rickets and arthritis. (R. 291.) He described his childhood casting treatment for rickets and explained that although he still has bowing of both femur, the casting improved it significantly. (*Id.*) Claimant complained that his arthritis prevents him from standing or sitting for long periods of time and causes stiffness and sluggishness. (*Id.*) He also avoids stairs due to pain. (*Id.*) Claimant also explained that he broke his right ankle and leg when he was hit by a car in 2005. (R. 292.) He still suffers from stiffness from that accident. (*Id.*) He was suffering from neck

pain on the date of the appointment, for which he takes anti-inflammatory medication. (*Id.*)  According to Claimant, he was fired from his assembly line job in 2003 for being "too slow."  (*Id.*)  He later worked as a photographer, but had difficulty standing and ambulating during photo shoots.  (*Id.*)  At the time of the examination, Claimant said he did not have a physician and had not been to a doctor since 2005.  (*Id.*)  He was taking ibuprofen and Aleve.  (*Id.*)

Upon examination, Dr. Middleton observed severe bowing, muscle spasms and increased muscle tone of the neck, mild thoracic scoliosis, lumbar pain with bilateral hip abduction and flexion, increased muscle tone of the spine, and markedly decreased range of motion of the hips bilaterally.  (R. 293.)  Otherwise Claimant exhibited negative straight leg tests and full range of motion in all other joints tested.  (*Id.*)  A neurological exam was normal and Claimant had normal strength in all extremities.  (*Id.*)  Claimant had a waddling gait without an assistive device and could get on and off the exam table and walk on his toes without difficulty.  (*Id.*)  He was unable to squat greater than ten degrees with support and could not walk on his heels without difficulty due to bowing of the legs.  (*Id.*)

Dr. Middleton assessed rickets and arthritis and opined the following:

> The claimant is expected to experience muscle weakness, stiffness and pain with activity due to the nature of osteomalacia.  He would have difficulty performing work that requires heavy labor or repetitive lifting, pulling, pushing, standing, ambulating or climbing.[1]

(R. 293.)

---

[1]  Osteomalacia refers to a marked softening of the bones, most often caused by severe vitamin D deficiency, which can lead to bowing in children during growth.  Mayo Clinic, "Osteomalacia," https://www.mayoclinic.org/diseases-conditions/osteomalacia/symptoms-causes/syc-20355514 (last visited April 10, 2018).

On February 14, 2013, agency consulting physician Dr. Gotway reviewed the record before him, including Dr. Middleton's report, and determined that Claimant was not disabled.  (R. 92-103.)  According to Dr. Gotway, Claimant could perform light work, including occasionally lifting up to twenty pounds, frequently ten; standing, walking or sitting for about six hours in an eight hour day; and unlimited pushing or pulling.  (R. 95.)  On August 1, 2013, Dr. Gonzalez reviewed the record at the reconsideration level and affirmed Dr. Gotway's findings, adding only that Claimant was limited to frequent kneeling, crouching, and crawling.  (R. 110-11.)

### C.  Claimant's Hearing Testimony

Claimant's administrative hearing was held on September 16, 2014.  Prior to that hearing, a senior attorney for the Social Security Administration ("SSA") contacted Claimant for a pre-hearing conference.  The transcript of that conference reveals that the attorney advised Claimant that he had a right to be represented by an attorney at his hearing; that an attorney could help him obtain information, submit evidence, and protect his rights; that certain free legal organizations may be able to assist him; and that an attorney could not charge him a fee unless he won his case.  (R. 82-83.)  The SSA attorney did not specifically inform Claimant of the 25% cap on attorney's fees.  The attorney also obtained information from Claimant about his recent medical treatment so that he could request the records for the ALJ.  (R. 84-86.)

Ultimately, Claimant appeared at his hearing before the ALJ without counsel.  The ALJ first confirmed that Claimant had previously been informed of his right to counsel and questioned whether Claimant was ready to proceed without a representative.  (R. 36.)  Claimant confirmed that he was.  (*Id.*)

At the time of the hearing, Claimant was 48 years old and residing with friends. (R. 40, 42.)  He explained that he worked until November 2012 as a self-employed photographer, but stopped due to increasing problems caused by rickets and arthritis. (R. 44, 52.)  Claimant previously worked as a bill collector and a driver transporting passengers to and from the airport and to medical appointments.  (R. 48, 51.)

Claimant testified that in 2012 he started experiencing more pain, stiffness and cramping in his legs due to his bone structure.  (R. 55.)  The stiffness can last for hours at a time depending on what he is doing.  (*Id.*)  After sitting for long periods he has to get up and stretch.  (R. 60.)  He also has arthritis in his ankles, foot, legs, back and neck that has worsened over time.  (R. 57.)

At the time of the hearing, and for three years prior, Claimant was being treated with ibuprofen, muscle relaxers, and heating pads, which provided a "little" relief.  (R. 55-56.)  He has a cane, but only uses it twice a week if he knows he will be walking long distances.  (R. 61.)  Claimant also testified that he had not completely recovered from the March 2014 car accident.  (R. 62.)  He was still suffering from neck and back spasms, as well as numbness in his toes.  (*Id.*)  According to Claimant, his doctors wanted him to get back surgery.  (*Id.*)  He also planned to see a neurologist at UIC the following day.  (*Id.*)

Claimant is able to groom himself, cook simple meals, and perform household chores for ten to fifteen minutes at a time. (R. 41, 58.)  On a typical day, Claimant gets out of bed, stretches, and then watches TV or plays on the computer.  (R. 62.)  He enjoys hanging out with friends and playing cards, which he sometimes does for two to

three hours at a time.  (R. 58-59.)  He also goes to movies and Narcotics Anonymous meetings.  (R. 59.)

Again, at the close of the hearing, the ALJ granted Claimant twenty-eight days to submit any additional medical records he thought were relevant to his case.  (R. 70.) The ALJ also advised Claimant that if he was having any difficulty obtaining his records, he should contact his office for additional assistance.  (*Id.*)

### D. Vocational Expert's Hearing Testimony

A Vocational Expert ("VE") also testified at the hearing.  The VE first classified Claimant's past work under the Dictionary of Occupational Titles ("DOT") as a collector (skilled/sedentary), a photographer (skilled/light, heavy as performed), van driver (semi-skilled/medium, light as performed), and a porter (unskilled/medium, sedentary or light as performed).  (R. 73-74.)

Next the ALJ asked the VE if an individual who was limited to light work and to frequent crouching, kneeling, and crawling could perform Claimant's past work.  (R. 74.) The VE testified that the individual could work as a collector or a photographer at the light exertional level as called for by the DOT.  (*Id.*)  If the individual were further limited to only performing sedentary work, he could work only as a collector.  (R. 75.)  Lastly, the VE explained that an individual would be unemployable if he could not perform sustained activity on a regular and continuing basis for eight hours a day, forty hours a week.  (*Id.*)

## II.  LEGAL ANALYSIS

### A.  Standard of Review

This Court will affirm the ALJ's decision if it is supported by substantial evidence and free from legal error. 42 U.S.C. § 405(g); *Steele v. Barnhart*, 290 F.3d 936, 940 (7th Cir. 2002). Substantial evidence is more than a scintilla of evidence; it is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Diaz v. Chater*, 55 F.3d 300, 305 (7th Cir. 1995) (quoting *Richardson v. Perales*, 402 U.S. 389, 401, 91 S.Ct. 1420, 28 L.Ed.2d 842 (1971)). We must consider the entire administrative record, but will not "reweigh evidence, resolve conflicts, decide questions of credibility, or substitute our own judgment for that of the Commissioner." *Lopez v. Barnhart*, 336 F.3d 535, 539 (7th Cir. 2003) (citing *Clifford v. Apfel*, 227 F.3d 863, 869 (7th Cir. 2000)). This Court will "conduct a critical review of the evidence" and will not let the Commissioner's decision stand "if it lacks evidentiary support or an adequate discussion of the issues." *Lopez*, 336 F.3d at 539 (quoting *Steele*, 290 F.3d at 940).

In addition, while the ALJ "is not required to address every piece of evidence," he "must build an accurate and logical bridge from evidence to his conclusion." *Clifford*, 227 F.3d at 872. The ALJ must "sufficiently articulate [his] assessment of the evidence to assure us that the ALJ considered the important evidence … [and to enable] us to trace the path of the ALJ's reasoning." *Carlson v. Shalala*, 999 F.2d 180, 181 (7th Cir. 1993) (per curiam) (quoting *Stephens v. Heckler*, 766 F.2d 284, 287 (7th Cir. 1985)).

### B. Analysis under the Social Security Act

In order to qualify for SSI or DIB, a claimant must be "disabled" under the Social Security Act (the "Act"). A person is disabled under the Act if "he or she has an inability to engage in any substantial gainful activity by reason of a medically determinable

physical or mental impairment which can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 423(d)(1)(A). In determining whether a claimant is disabled, the ALJ must consider the following five-step inquiry: "(1) whether the claimant is currently employed, (2) whether the claimant has a severe impairment, (3) whether the claimant's impairment is one that the Commissioner considers conclusively disabling, (4) if the claimant does not have a conclusively disabling impairment, whether he can perform past relevant work, and (5) whether the claimant is capable of performing any work in the national economy." *Dixon v. Massanari*, 270 F.3d 1171, 1176 (7th Cir. 2001). The claimant has the burden of establishing disability at steps one through four. *Zurawski v. Halter*, 245 F.3d 881, 885-86 (7th Cir. 2001). If the claimant reaches step five, the burden then shifts to the Commissioner to show that "the claimant is capable of performing work in the national economy." *Id.* at 886.

Here, the ALJ applied this five-step process to reach his decision denying Claimant's applications for benefits. At step one, the ALJ found that Claimant had engaged in substantial activity since his alleged onset of disability when he worked as a photographer. (R. 22.) However, because there had been a continuous period of greater than twelve months during which the Claimant did not engage in substantial gainful activity, the ALJ proceeded to the next step. (*Id.*) At step two, the ALJ determined that Claimant had the following severe impairments: rickets and arthritis including spine arthritis causing spinal stenosis. (R. 22). The ALJ also recognized that Claimant suffers from the non-severe impairment of obesity, and noted that the record demonstrates no significant treatment or complications related to obesity. (*Id.*) At step three, the ALJ concluded that Claimant does not have an impairment or combination of

impairments that meets or medically equals the severity of one of the Commissioner's listed impairments.  (R. 22-23.)

Next, the ALJ assessed Claimant's residual functional capacity ("RFC"), finding that Claimant could perform light work as defined in 20 CFR § 404.1567(b) and § 416.967(b) except that Claimant could frequently crouch, kneel, and crawl.  (R. 22-27.) In reaching this conclusion, the ALJ gave little weight to the opinion of Dr. Middleton and great weight to the opinions of Drs. Gotway and Gonzalez.  (R. 27-28.)  Based on the RFC, the ALJ concluded at step four that Claimant could perform his past relevant work as a collector, photographer, and driver.  (R. 28.)  As a result, the ALJ did not proceed to step five and entered a finding of not disabled.  (R. 28-29.)

Claimant now takes issue with the ALJ's decision for a number of reasons, including that the ALJ failed to obtain a valid waiver of counsel; failed to properly develop the record; improperly rejected the opinion of Dr. Middleton; and failed to properly assess his credibility.  We address each of Claimant's arguments in turn below, ultimately finding that the ALJ's opinion should be affirmed.

### C.  The ALJ's Opinion is Supported by Substantial Evidence and Free From Legal Error.

#### 1. The ALJ Obtained a Valid Waiver of Representation from Claimant.

Claimant first argues that the ALJ failed to obtain a valid waiver of representation because the SSA attorney did not inform him of the 25% cap on attorney's fees during the pre-hearing conference.  The Commissioner responds that Claimant was properly informed of the cap in various documents he received via mail.  The Court agrees.

Indeed, a Social Security claimant has a "statutory right to counsel at disability hearings."  *Thompson v. Sullivan*, 933 F.2d 581, 584 (7th Cir. 1991).  But a claimant

may validly waive that right so long as he is given "sufficient information to enable him to intelligently decide whether to retain counsel or proceed *pro se*." *Id.* (quoting *Hawwat v. Heckler*, 608 F.Supp. 106, 108 (N.D.Ill. 1984). Such information includes (1) an explanation of the manner in which an attorney can aid in the proceedings; (2) the possibility of free counsel or a contingency arrangement, and (3) the limitations on attorneys' fees to twenty-five percent of past due benefits. *Binion v. Shalala*, 13 F.3d 243, 245 (7th Cir. 1994).

At issue here is the third piece of information and there is no dispute that the SSA attorney failed to inform the Claimant of the 25% cap during the pre-hearing conference. However, Claimant himself concedes in his reply that he was notified of the 25% cap in documents he received from the Commissioner, including the document titled "*Your Right to Representation*" that accompanies the hearing notice. (Reply at 2; R. 158-59.) Claimant's receipt of that information is further confirmed by the signed and returned acknowledgement of receipt of the hearing notice. (R. 213.) Some district courts have held that the *Your Right to Representation* form, combined with a signed acknowledgement of the hearing, constitutes a valid waiver of counsel. *See Hill v. Berryhill*, No. 16 CV 00523, 2017 WL 1028150, at *4 (N.D. Ill. Mar. 16, 2017); *Moore v. Astrue*, 851 F. Supp. 2d 1131, 1141 (N.D. Ill. 2012). Here, where there is a signed acknowledgement of receipt *and* a concession by the Claimant that he received the information, the Court is confident that a valid waiver of representation was obtained.

This conclusion does not change the fact that when a claimant is unrepresented, the ALJ has a duty to develop the record "fully and fairly." *Binion v. Shalala*, 13 F.3d at 245 (noting that "the ALJ has the same duty to develop the record when a plaintiff is

without counsel regardless of whether the plaintiff's waiver of counsel was valid"). That duty is met if "the ALJ probes the claimant for possible disabilities and uncovers all of the relevant evidence." *Id.* Where, as here, a claimant has waived his right to representation, "the burden is on the claimant to show that the ALJ failed to fulfill this duty." *Juza v. Berryhill*, No. 17 CV 439, 2018 WL 1010209, at *5 (E.D. Wis. Feb. 21, 2018). As explained in more detail below, the ALJ fulfilled that duty here.

### 2. The ALJ Did Not Err at Step One.

Claimant also objects to the ALJ's finding at step one that he engaged in substantial gainful activity ("SGA") after his alleged onset date when he worked as a self-employed photographer. According to Claimant, his income did not rise to the threshold level to constitute SGA. As the Commissioner points out, income alone is not the only consideration when determining SGA. *See* 20 C.F.R. § 404.1575(a)(2) ("We will not consider your income alone because the amount of income you actually receive may depend on a number of different factors…"). What is more, the ALJ did not stop his analysis at step one, instead finding that there had been a continuous period of greater than twelve months during which Claimant had not engaged in substantial gainful activity. As such, he properly moved on in the sequential analysis and the Court finds no reversible error in his step one determination.

### 3. The ALJ Properly Considered Claimant's Obesity.

According to Claimant, the ALJ failed to properly consider his obesity because he relied on extra-record evidence when describing his BMI as "mild, low risk-obesity" and he failed to abide by Social Security Ruling ("SSR") 02-1p. Again, the Court disagrees.

At step two, the ALJ determined that Claimant had the non-severe impairment of obesity. Based on the medical records, he calculated Claimant's BMI to be slightly in excess of 30. Citing the National Institute of Health's MedlinePlus site, he described Claimant as having "mild, low-risk obesity" under the BMI classification scale. (R. 22.) The Court finds no error in the ALJ's citation to the MedlinePlus site. Courts regularly cite to the MedlinePlus site for general medical information and the classification scale used by the ALJ here is regularly applied in Social Security cases. In fact, SSR 02-1p cites to and relies upon the National Institute of Health obesity classification scale. *See* SSR 02-1p, 2002 WL 34686281, at *1.

As for the ALJ's overall compliance with SSR 02-1p, this is not a case where the ALJ ignored Claimant's obesity altogether. Instead, the ALJ acknowledged Claimant's obesity, but found that the medical record demonstrated no significant treatment or complications related to obesity. Nonetheless, the ALJ indicated that he took Claimant's non-severe obesity into consideration at the remaining steps of the analysis. *See Prochaska v. Barnhart*, 454 F.3d 731, 736 (7th Cir. 2006) ("According to SSR 02-1p, an ALJ should consider the effects of obesity together with the underlying impairments, even if the individual does not claim obesity as an impairment."). While perhaps the ALJ could have elaborated further, Claimant has not directed the Court to any record evidence indicating that his non-severe obesity does in fact cause him additional work related limitations. As such, remand is not warranted on this issue.

### 4. The ALJ Properly Considered the Opinions of the Physicians.

Next, for a number of reasons, Claimant takes issue with the ALJ's treatment of the opinions of Drs. Middleton, Gotway, and Gonzalez. Claimant first argues that the

ALJ improperly "played doctor" and otherwise erred in giving "great weight" to the opinions of Drs. Gotway and Gonzales, who did not review the records from Mercy or U of I following the March 2014 car accident. Of particular importance to Claimant are the March 27 and April 2 CT scans. As explained above, those scans showed degenerative changes of the spine, including calcification throughout the cervical and upper thoracic spine and bone spurs possibly related to "diffuse idiopathic skeletal hyperostosis."[2] (R. 371, 407-07.) According to Claimant, the ALJ improperly played doctor when he interpreted the CT scans and treatment records and concluded, without the assistance of a medical expert, that Claimant would not have any additional work-related functional limitations.

First, the ALJ did not improperly play doctor here. It is well settled that an ALJ may not "play doctor" by substituting his own opinion for that of a physician, or make judgments that are not substantiated by objective medical evidence. *Brennan-Kenyon v. Barnhart*, 252 F. Supp. 2d 681, 691 (N.D. Ill. 2003) (citing *Rohan v. Chater*, 98 F.3d 966, 970-71 (7th Cir. 1996)). However, cases in which reversal is appropriate for an ALJ playing doctor are "ones in which the ALJ failed to address relevant evidence." *Dixon v. Massanari*, 270 F.3d 1171, 1177-78 (7th Cir. 2001); *see also Back v. Barnhart*, 63 F. App'x 254, 259 (7th Cir. 2003) ("Typical cases of ALJs impermissibly 'playing doctor' are when they either reject a doctor's medical conclusion without other evidence … or when they draw medical conclusions themselves about a claimant without relying on medical evidence…") (internal citations omitted).

---

[2] Diffuse idiopathic skeletal hyperostosis ("DISH") is a bony hardening of ligaments in areas where they attach to your spine. Mayo Clinic "Diffuse idiopathic skeletal hyperostosis," https://www.mayoclinic.org/diseases-conditions/diffuse-idiopathic-skeletal-hyperostosis/symptoms-causes/syc-20371661 (last visited April 10, 2018).

Here, the ALJ properly considered all of the evidence before him, including the CT scans and records from Mercy and U of I after Claimant's car accident. In reaching his RFC conclusion, the ALJ noted that the physical examinations from the March and April 2014 ER visits yielded mostly normal results and commented on the routine treatment recommendations following those visits. Any inferences and conclusions he drew were grounded in (and substantially supported by) the record as a whole. As such, he did not impermissibly play doctor. *See Dixon*, 270 F.3d at 1178 (finding ALJ did not play doctor where she "thoroughly discussed the medical evidence in making her decision").

The Court also disagrees that the ALJ was required to submit the records that post-dated the agency physicians' opinions back to those physicians or to a different medical expert for additional review. "The Seventh Circuit has repeatedly found that an ALJ does not automatically have to update a medical opinion where there is evidence that post-dates the original." *Penman v. Colvin*, No. 15 CV 440, 2016 WL 3452609, at *8 (S.D. Ind. June 23, 2016) (citing *Skarbek v. Barnhart*, 390 F.3d 500, 504 (7th Cir. 2004)). Instead, an ALJ need only re-contact medical sources when the "evidence received is inadequate to determine whether the claimant is disabled." *Skarbek*, 390 F.3d at 504. The evidence was not so inadequate here, and the ALJ was within his discretion not to call a medical expert.

This case can be distinguished from those heavily relied upon by Claimant. For example, in *Childress v. Colvin*, 845 F.3d 789, 792 (7th Cir. 2017), the Seventh Circuit did indeed characterize the opinions of agency physicians as "worthless" when they did not have access to the Claimant's entire medical record. But the medical record there

was described as "abundantly full," including "extensive" evidence presented by the Claimant's treating physicians. *Id.* at 790, 792. Similarly, the ALJ in *Goins v. Colvin*, 764 F.3d 677, 680 (7th Cir. 2014), erred when she failed to submit a "potentially decisive" MRI to a medical expert for review. But the medical evidence here, in particular the evidence submitted after the agency physicians' review, was not so significant that it required additional medical expert review. Again, while the CT scans showed some degenerative changes, the treatment recommendations from the physicians who reviewed those scans remained routine. On the whole, the ALJ properly considered this evidence, along with the rest of the record, when accepting the opinions of the agency physicians and assessing Claimant's RFC.

Claimant also argues that the ALJ erred by giving "little weight" to the opinion of agency examining physician Dr. Middleton, who opined generally that Claimant would have difficulty performing work that requires heavy lifting, pulling, pushing, standing, ambulating, or climbing. In affording this opinion little weight, the ALJ described it as "overly general without specific degree of the claimant's functional limitations." (R. 28.) He also concluded that Dr. Middleton relied heavily on Claimant's subjective reports, as there was "minimal evidence of objective studies or treatment" to support the alleged limitations. (*Id.*) The Court finds this reasoning sufficient.

Claimant is correct that the Court should review the dismissal of an opinion of an agency examining physician carefully. *See Beardsley v. Colvin*, 758 F.3d 834, 839 (7th Cir. 2014) (noting that discounting the opinion of the agency's own examining physician "can be expected to cause a reviewing court to take notice and await a good explanation for this unusual step."). This is because an agency doctor is unlikely to

exaggerate an applicant's disability as the applicant is not his patient. *Garcia v. Colvin*, 741 F.3d 758, 761 (7th Cir. 2013).

Here, the ALJ was clear in his reasoning for discounting Dr. Middleton's opinions. Dr. Middleton did indeed make some objective findings during her consultative examination (e.g. tenderness, spasms, some limited range of motion). But overall, the ALJ found that her conclusions were over general, based primarily on the Claimant's subjective complaints, and were unsupported by the record as a whole, including the opinions of Drs. Gotway and Gonzalez who reviewed her report. On this record, this reasoning is sufficient. *See Turner v. Astrue*, 390 F. App'x 581, 585 (7th Cir. 2010) (finding no error in discounting the opinion of a consulting physician where ALJ was clear in his reasoning). And while Claimant argues that the ALJ could have re-contacted Dr. Middleton for further clarification, the Court finds that the ALJ satisfied his duty to develop the record here, even where Claimant was unrepresented. *See Nelms v. Astrue*, 553 F.3d 1093, 1098 (7th Cir. 2009) ("Mere conjecture or speculation that additional evidence might have been obtained in the case is insufficient to warrant a remand.").

### 5. The ALJ Properly Assessed Claimant's Symptoms.

Claimant also takes issue with the ALJ's assessment of his symptoms, arguing that the ALJ used boilerplate language, improperly relied on an absence of objective evidence, put too much weight on his daily activities, and ignored his pain symptoms. The Court disagrees.

Under SSR 96-7p, the ALJ must first determine whether the Claimant has a medically determinable impairment that could reasonably be expected to produce his

symptoms.[3]  SSR 96-7p, 1996 WL 374186, at *2.  Then, the ALJ must evaluate the "intensity, persistence, and limiting effects of the individual's symptoms to determine the extent to which the symptoms limit the individual's ability to do basic work activities."  *Id.* An individual's statements about the intensity and persistence of the pain may not be disregarded because they are not substantiated by objective medical evidence.  *Id.* at *6.  In determining the ability of the Claimant to perform work-related activities, the ALJ must consider the entire case record, and the decision must contain specific reasons for the finding.  *Id.* at *4.

SSR 96-7p requires the ALJ to consider the following factors in addition to the objective medical evidence: (1) the claimant's daily activities; (2) the location, duration, frequency and intensity of the pain or other symptoms; (3) factors that precipitate and aggravate the symptoms; (4) the type, dosage, effectiveness and side effects of medication; (5) any treatment, other than medication, for relief of pain or other symptoms; (6) any measure the claimant uses to relieve the pain or other symptoms; and (7) any other factors concerning the claimant's functional limitations and restrictions due to pain or other symptoms.  SSR 96-7p, 1996 WL 374186, at *3.  The Court will only reverse the ALJ's credibility finding if it is "patently wrong."  *See Powers v. Apfel*, 207 F.3d 431, 435 (7th Cir. 2000).  The ALJ's credibility determination is patently wrong if it lacks "any explanation or support."  *Elder v. Astrue*, 529 F.3d 408, 413–14 (7th Cir. 2008).

---

[3] Since the ALJ issued his decision in this case, the SSA has issued new guidance on how the agency assesses the effects of a claimant's alleged symptoms.  SSR 96-7p and its focus on "credibility" has been superseded by SSR 16-3p in order to "clarify that subjective symptom evaluation is not an examination of the individual's character."  See SSR 16-3p, 2016 WL 1119029, at *1.  However, the SSA recently clarified that Courts should only apply SSR 16-3 to determinations made on or after March 28, 2016.  *See* Notice of Social Security Ruling, 82 Fed. Reg. 49462 n.27 (Oct. 25, 2017).  Here, we continue to assess the ALJ's findings under SSR 96-7p.

In assessing Claimant's symptoms and allegations of pain here, the ALJ properly followed the requirements of SSR 96-7p. First, while the opinion may have included some of the frowned upon boilerplate language, the ALJ went beyond just that language, providing additional reasons for his conclusions. *Pepper v. Colvin*, 712 F.3d 351, 367-68 (7th Cir. 2013) ("[T]he simple fact that an ALJ used boilerplate language does not automatically undermine or discredit the ALJ's ultimate conclusion if he otherwise points to information that justifies his credibility determination.")

In the same vein, the ALJ did not rely *solely* on the lack of objective medical evidence supporting Claimant's allegations, though that certainly did play into his consideration (and properly so given the record before him). However, as prescribed by SSR 96-7p, the ALJ also discussed the alleged symptoms, the relative routine nature of Claimant's medical treatment, his array of daily activities, including housework, driving, attending meetings and movies, and his ability to work in the past despite complaints of lifelong pain.[4] Contrary to Claimant's assertion, the Court does not find that the ALJ placed undue weight on any of these factors. The ALJ's assessment was not patently wrong.

### 6. The ALJ Did Not Err at Step Four.

Lastly, Claimant argues that the ALJ failed to compare the actual physical demands of his past relevant work to his RFC. At step four, the ALJ determined that Claimant could perform his past relevant work as a collector (as performed by Claimant and as generally performed), as a photographer (as generally performed), or as a driver

---

[4] Claimant also objects to the ALJ's failure to inquire into any reasons for infrequent treatment. *See Craft v. Astrue*, 539 F.3d 668, 679 (7th Cir. 2008). But our reading of the ALJ's opinion reveals that he focused more on the routine nature of the treatment Claimant did receive and, more importantly, his assessment was not based solely on a lack of treatment. *See Pulli v. Astrue*, 643 F.Supp.2d 1062, 1074 (finding no error where ALJ's credibility assessment was not solely based on claimant's failure to seek treatment).

(as performed by Claimant).  He also cited to the specific DOT listings for each position and indicated that he relied on the testimony of the VE to reach his conclusion.  The Court finds no error at step four.

Claimant correctly cites SSR 82-62, 1982 WL 31386, and related Seventh Circuit authority for the general principle that an "ALJ may not describe positions as a general exertional category and then find that a claimant may thus perform that specific job, based on the general category of their RFC."  (Pl.'s Brief at 21) (citing *Nolen v. Sullivan*, 939 F.2d 516, 519 (7th Cir. 1991).  But that principle has been more narrowly construed than Claimant implies.  *See Cohen v. Astrue,* 258 F. App'x 20, 28 (7th Cir. 2007).  It does not apply where "an ALJ considered the claimant's specific job and there is evidence in the record as to the duties of that job."  *Tolbert v. Astrue*, No. 09 CV 01348, 2011 WL 883927, at *14 (S.D. Ind. Mar. 11, 2011).

Here, the ALJ did not simply describe Claimant's past work as a generic exertional level, but identified each of Claimant's past relevant jobs.  Descriptions of those jobs were included in the record and Claimant offered additional testimony at the hearing.  The VE confirmed at the hearing that he reviewed the record and based his conclusions thereon.  The VE also identified specific job listings in the DOT.  The ALJ properly relied on the VE's testimony at step four.  *Cherry v. Berryhill*, No. 16 CV 425, 2018 WL 571944, at *13 (N.D. Ind. Jan. 26, 2018) (finding no error where the ALJ relied on the vocational expert's testimony, which was supported by the record).  What is more, Claimant cites to no specific inconsistencies between the requirements of the past relevant work and his RFC.  *See Boone v. Astrue*, No. 09 CV 7080, 2011 WL

290383, at *4 (N.D. Ill. Jan. 25, 2011).  As such, the ALJ did not commit reversible error at step four.

## III.  CONCLUSION

For the reasons set forth above, Claimant's motion for summary judgment is denied and the Commissioner's motion for summary judgment is granted.  The decision of the ALJ is affirmed.  It is so ordered.

**Michael T. Mason**
**United States Magistrate Judge**

**Dated: April 12, 2018**